[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12392

_____

D.C. Docket No. 1:09-cv-00009-KD-B

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 27, 2012
JOHN LEY
CLERK

VERNON MADISON,

Petitioner - Appellant,

versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF ALABAMA,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(April 27, 2012)

Before DUBINA, Chief Judge, and BARKETT and MARTIN, Circuit Judges.

PER CURIAM:

Vernon Madison, an Alabama prisoner on death row, appeals from the

district court's denial of his petition for a writ of habeas corpus, brought pursuant

to 28 U.S.C. § 2254.  This Court granted Madison a Certificate of Appealability as to the following issues: (1) whether the trial judge and Alabama Court of Criminal Appeals violated Batson v. Kentucky, 476 U.S. 79 (1986), and the Fourteenth Amendment by erroneously concluding that counsel had not established a prima facie case of discrimination in the prosecution's use of peremptory strikes; (2) whether the trial judge and the Court of Criminal Appeals violated the Eighth and Fourteenth Amendments by failing to consider and find mitigating evidence when imposing and affirming Madison's death sentence; and (3) whether the authority of a trial judge to judicially "override" a jury sentencing recommendation results in a sentence based on arbitrary procedures, in violation of the Eighth and Fourteenth Amendments.

## I.  Background

Madison, who is black, was indicted for capital murder for killing a white police officer.  He was initially convicted and sentenced to death.  The Court of Criminal Appeals reversed his conviction because the dictates of Batson had been violated.  Madison v. State, 545 So. 2d 94 (Ala. Crim. App. 1987) ("Madison I").  At his second trial, Madison was again convicted and sentenced to death, and the Court of Criminal Appeals again reversed his conviction, this time on the grounds that the state had elicited expert testimony based partly on facts not in evidence.

Madison v. State, 620 So. 2d 62 (Ala. Crim. App. 1992) ("Madison II").

At his third trial, the jury found Madison guilty of capital murder and recommended, by an 8–4 vote, that he be sentenced to life imprisonment without parole. The trial judge, however, overrode the jury's recommendation and sentenced Madison to death. The Court of Criminal Appeals affirmed both his conviction and sentence, Madison v. State, 718 So. 2d 90 (Ala. Crim. App. 1997) ("Madison III"), and the Alabama Supreme Court affirmed as well, Ex parte Madison, 718 So. 2d 104 (Ala. 1998). Madison filed a petition for post–conviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure, which was dismissed by the trial court and affirmed by the Court of Criminal Appeals. Madison v. State, 999 So. 2d 561 (Ala. Crim. App. 2006). Madison then filed this petition in federal court, which was denied, and it is from this order that Madison now appeals.

## II. Standard of Review

This appeal is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. Because Madison's claims were adjudicated on the merits in his state proceedings, § 2254(d) allows federal habeas relief only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

3

law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

If we determine that a state court decision is contrary to or an unreasonable application of federal law, we must undertake a de novo review of the record. McGahee v. Ala. Dep't of Corr., 560 F.3d 1252, 1266 (11th Cir. 2009). We address Madison's arguments in turn.[1]

### III. Discussion

Initially, we find that Madison's claim that Alabama's judicial override scheme violates the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment is foreclosed by precedent. See Harris v. Alabama, 513 U.S. 504 (1995) (holding that Alabama's judicial override scheme did not violate the Eighth Amendment by not specifying the weight the judge must give to a jury recommendation). Here, the trial judge stated that it gave the jury recommendation "significant weight" and "all due and proper serious consideration[.]" Thus, as applied in this case, Alabama's judicial override scheme did not result in a decision

---

[1] We focus on the Court of Criminal Appeals's decision because it is the last reasoned decision of the state court on these issues. See McGahee, 560 F.3d at 1261 n.12.

4

that arbitrarily or capriciously disregarded the jury's recommendation of life imprisonment without parole.

We next turn to Madison's claim that the Alabama courts failed to consider the mitigating evidence of Madison's mental illness[2] and his mother's plea for mercy. Although the trial judge's sentencing order might have been inartful, it appears clear to us that the trial judge, and the Court of Criminal Appeals, considered Madison's evidence, but found it insufficient to outweigh the aggravating circumstances. Regarding the mental illness evidence, the trial judge did give "due consideration to the testimony of the [mental health expert] as evidence of a mitigating circumstance." Although the trial judge found that Madison's mental illness was not sufficiently extreme to be considered a statutory mitigating factor,[3] he did consider Madison's illness and mother's plea as non–statutory mitigating circumstances. The trial judge stated that he "considered the testimony of lay witnesses and all other mitigating evidence offered by the Defendant, including that not enumerated as statutory mitigating circumstances."

---

[2] In particular, Madison's expert testified that he suffered from a delusional disorder, that he had experienced persecution delusions since he was a teenager, that he was out of touch with reality, that he was unable to gather his thoughts, and that he could not appreciate the criminality of his conduct. To control his illness, Madison had been prescribed numerous anti-psychotic medications.

[3] See Ala. Code § 13a-5-51(2) (stating that one statutory mitigating factor is whether "[t]he capital offense was committed while the defendant was under the influence of extreme mental or emotional disturbance") (emphasis added).

The trial judge concluded in his sentencing order that the "aggravating circumstances overwhelmingly outweigh the mitigating circumstances" and the Court of Criminal Appeals affirmed. Madison III, 718 So. 2d at 96–97. We cannot say that the decisions of the state trial and appellate courts in this regard were contrary to, or involved an unreasonable application of, clearly established federal law. See § 2254(d)(1).

We now address Madison's claim that the trial judge and the Court of Criminal Appeals violated Batson v. Kentucky, 476 U.S. 79 (1986), by failing to determine that Madison established a prima facie Batson case. The Equal Protection Clause of the Fourteenth Amendment prohibits using peremptory challenges to exclude jurors on the basis of race. Batson, 476 U.S. at 89. The Supreme Court has enumerated a three–step process for determining whether a Batson violation has occurred:

> First, the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. Second, once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial exclusion by offering permissible race-neutral justifications for the strikes. Third, if a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.

Johnson v. California, 545 U.S. 162, 168 (2005) (internal quotation marks,

6

citations, and footnotes omitted).

In Johnson, the Supreme Court held that, to establish a prima facie case, a Batson objector did not "have to persuade the judge . . . that the challenge was more likely than not the product of purposeful discrimination." 545 U.S. at 170. Rather, "a defendant satisfies the requirements of Batson's first step by producing evidence sufficient to permit the trial court to draw an inference that discrimination has occurred." Id. (emphasis added). It is not until the third step of the Batson framework, after considering the objection as well as the reasons proffered for the strike, that a judge decides whether there is sufficient persuasive evidence to prove discrimination. Id. ("[W]e assumed in Batson that the trial judge would have the benefit of all relevant circumstances, including the prosecutor's explanation, before deciding whether it was more likely than not that the challenge was improperly motivated."); see also McNair v. Campbell, 416 F.3d 1291, 1310 (11th Cir. 2005) (explaining that only at the third step does the court "determine whether the defendant has proven purposeful discrimination"). Thus, we must only determine whether Madison produced sufficient evidence to permit an inference of discrimination. See Batson, 476 U.S. at 96.

When considering whether an objector has made a prima facie case as a first step, a court must consider all relevant circumstances which include, but are not

limited to: (1) a prosecutor's pattern of strikes against black jurors included in the venire, Batson, 476 U.S. at 97; (2) the prosecutor's questions and statements during voir dire examination, id.; (3) the failure of a prosecutor to ask meaningful questions to the struck jurors, Miller-El v. Dretke, 545 U.S. 231, 244–45 (2005); (4) "the subject matter of the case . . . if it is racially or ethnically sensitive," United States v. Ochoa–Vasquez, 428 F.3d 1015, 1045 n.39 (11th Cir. 2005); and (5) evidence of past discrimination in jury selection, Miller-El, 545 U.S. at 266.

In this case, the venire originally consisted of sixty members, fifteen of whom were black. After strikes for cause, there were thirteen qualified black jurors.[4] The prosecutor then used six of his eighteen peremptory strikes on the qualified black jurors. When Madison's counsel objected, the trial judge asked the prosecutor to provide a race–neutral explanation for the peremptory strikes of the black jurors. However, instead of doing so, the prosecutor protested that Madison had not established a prima facie case. When the trial judge asked the prosecutor what he meant, the prosecutor erroneously responded that to establish a prima facie case Madison not only had to show that he was a member of the group suffering discrimination, but "that the State has a history of racial discrimination."[5]

_____

[4] The prosecutor used one of his "for cause" strikes against a black juror.

[5] This proffered standard requiring a "history of racial discrimination" is incorrect and mirrors the prima facie requirements under Swain v. Alabama, 380 U.S. 202 (1965), which

8

Madison's counsel responded that the prosecutor had cited the wrong test under Batson and that, under the correct test, there were sufficient relevant facts to support an inference of discrimination, which was all Madison's counsel had to show at this stage of the proceeding. Madison's counsel noted that the prosecutor had not asked meaningful questions to any of the challenged black jurors and in fact, for three such jurors, posed no questions at all. He noted that the challenged jurors only shared the common characteristic of race as they had heterogenous backgrounds of different sexes, ages, occupations, and education. He also noted that the subject matter of the case involved racial sensitivities as the defendant was black and the victim was a white police officer.[6]

Without addressing Madison's arguments or asking the prosecutor for a race–neutral reason for the strikes, the trial judge held that Madison's counsel had not proved "bias on the part of the State" and then denied the motion. The Court of Criminal Appeals affirmed that ruling, concluding that the trial judge had not erred in denying Madison's Batson claim, because Madison had not "established

---

Batson specifically overruled for being too onerous. Batson, 476 U.S. at 92 ("Since this interpretation of Swain has placed on defendants a crippling burden of proof, prosecutors's peremptory challenges are now largely immune from constitutional scrutiny. . . . [W]e reject this evidentiary formulation").

[6] Madison's counsel also raised the possibility that the fact might come out in trial that Madison had at the time a white girlfriend.

9

purposeful racial discrimination." Madison III, 718 So. 2d at 102.

Madison argues that the Court of Criminal Appeals unreasonably applied clearly established federal law because the court used the wrong standard for establishing a prima facie case when it required Madison to establish "purposeful racial discrimination" rather than to provide sufficient support for an inference of discrimination. We agree that requiring Madison to "establish[] purposeful discrimination" is the wrong standard to apply for the first step of Batson, which only requires Madison to produce sufficient "facts and any other relevant circumstances" that "raise an inference . . . of purposeful discrimination." 476 U.S. at 96 (emphasis added). The Court of Criminal Appeals's error mirrors the trial judge's conclusion that, at this first step, Madison was obliged to show "bias on the part of the State." The Supreme Court emphasized in Johnson that it "did not intend the [Batson] first step to be so onerous that a defendant would have to persuade the judge . . . that the challenge was more likely than not the product of purposeful discrimination." 545 U.S. at 170.

The Court of Criminal Appeals reached a decision contrary to clearly established federal law under 28 U.S.C. § 2254(d)(1) because the court increased Madison's prima facie burden beyond what Batson requires. In Williams v. Taylor, the Supreme Court held that a state court decision is contrary to clearly

10

established law under § 2254(d)(1) when it imposes a burden on the petitioner that is higher than what Supreme Court precedent requires. 529 U.S. 362, 405-06 (2000) (O'Connor, J., majority opinion) (explaining that requiring a petitioner who claims ineffective assistance of counsel to establish prejudice based on a preponderance of evidence is contrary to clearly established law because Supreme Court precedent only requires a reasonable probability of prejudice). Here, the Court of Criminal Appeals demanded that Madison establish purposeful discrimination at the outset rather than merely produce evidence sufficient to raise an inference of discrimination, which is all that Batson requires. Because the state-court decision falls within the "contrary to" clause of § 2254(d)(1), we must undertake a de novo review of the record. See id. at 406; see also McGahee, 560 F.3d at 1266 (same).

The record reflects that Madison presented to the Alabama courts several relevant circumstances that in total were sufficient to support an inference of discrimination. See Batson, 476 U.S. at 94 (holding that a prima facie case must be decided on the "totality of the relevant facts"); see also United States v. Hill, 643 F.3d 807, 839 (11th Cir. 2011) ("the prima facie case determination is not to be based on numbers alone but is to be made in light of the totality of the circumstances."). In addition to pointing out that the prosecutor used a number of

11

his strikes against a variety of black jurors, Madison noted: (1) the failure of the prosecutor to ask questions to three of the challenged jurors, see Batson, 476 U.S. at 97; see also Madison III, 718 So. 2d at 102 (finding this fact relevant); (2) the case's racially sensitive subject matter, see Ochoa–Vasquez, 428 F.3d at 1045 n.39;[7] and (3) the district attorney's office's prior discrimination in jury selection, occurring both in Madison's first trial and in other state cases, see McNair, 416 F.3d at 1312 (finding relevant a list of cases where the district attorney's office violated Batson).[8]

By presenting several relevant circumstances that in sum were sufficient to raise an inference of discrimination, Madison met his burden of establishing a prima facie case. Accordingly, we reverse the district court's order and remand the case for the district court to complete the final two steps of the Batson proceedings. See Ochoa-Vasquez, 428 F.3d at 1046 n.40 (stating that if the Batson objector's

---

[7] Indeed, the facts in Madison mirror those in Johnson, where the Supreme Court quoted with approval the lower court's finding that it was a "highly relevant circumstance that a black defendant was charged with killing his White girlfriend's child, and that it certainly looks suspicious that all three African-American prospective jurors were removed from the jury." 545 U.S. at 167 (internal quotation marks omitted). See also Hill, 643 F.3d at 840 ("[t]he fact that the defendants are the same race as the struck jurors . . . can be relevant to the prima facie question.").

[8] Madison cited the following cases: Jessie v. State, 659 So. 2d 167 (Ala. Crim. App. 1994); Carter v. State, 603 So. 2d 1137 (Ala. Crim. App. 1992); Jackson v. State, 557 So. 2d 855 (Ala. Crim. App. 1990); Harrell v. State, 571 So. 2d 1269 (Ala. Crim. App. 1990); White v. State, 522 So. 2d 323 (Ala. Crim. App. 1987); Williams v. State, 507 So. 2d 566 (Ala. Crim. App. 1987).

12

"evidence establishes a prima facie case, then we would need to remand to the district court for further <u>Batson</u> proceedings, including a statement of the reasons by the government for . . . its peremptory strikes."); <u>see also</u> <u>Paulino v. Castro</u>, 371 F.3d 1083, 1092 (9th Cir. 2004) (same).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

BARKETT, Circuit Judge, concurring:

I concur in the majority's opinion and write separately only to voice my agreement with Justice Stevens's recognition in <u>Harris v. Alabama</u>, 513 U.S. 504 (1995), of the perversity of Alabama's judicial override system in capital sentencing.  As Justice Stevens noted, Alabama is one of the four states that allow judicial override of a jury's recommendation of a life sentence.  <u>See</u> <u>Harris</u>, 513 U.S. at 515–16 (Stevens, J., dissenting).  Even though eight of the twelve jurors in Madison's case recommended that he receive a life sentence, Alabama's capital sentencing regime permitted the judge to reject, without <u>any</u> guiding standard, that recommendation in favor of a sentence of death, which is what the judge in this case did.

The practical consequence of Alabama's system is exactly as Justice Stevens described:

> The defendant's life is twice put in jeopardy, once before the jury and again in the repeat performance before a different, and likely less sympathetic, decisionmaker. A scheme that we assumed would provide capital defendants with more, rather than less, judicial protection, has perversely devolved into a procedure that requires the defendant to stave off a death sentence at each of two <u>de novo</u> sentencing hearings.

<u>Id.</u> at 521 (internal citation, quotation marks and alteration omitted).  Moreover, because the sentencing decision of the first decisionmaker—i.e, a presumed reasonable jury—can be ignored without any limiting principles in favor of a

14

sentence of death by the second decisionmaker, I question whether it can be

deemed constitutional.